UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>PERILLON SOFTWARE, INC.,<br><br>        Debtor. | Chapter 11<br><br>Case No. 19-40446 |

**DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
**[Expedited Determination On or Before March 27, 2019 Requested]**

Debtor Perillon Software, Inc. (the "Debtor"), by and through its proposed counsel, Madoff & Khoury LLP, hereby moves this Court for entry of an order pursuant to Sections 361 and 363(c)(2) of the Bankruptcy Code, and MLBR 4001-2, authorizing the use of the cash collateral of secured creditor Kabbage, Inc. ("Kabbage") and the Internal Revenue Service ("IRS") (collectively, the "Secured Creditors"). **As set forth below, the Debtor will need to pay certain ongoing expenses, including wages, on March 29, 2019. Accordingly, the Debtor requests, pursuant to MLBR 9013-1(g), expedited determination of this Motion by March 27, 2019.** In support of this Motion, the Debtor respectfully represents:

### I. Introduction

1. On March 22, 2019 (the "Petition Date"), the filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court.

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its businesses and financial affairs as a debtor-in-possession. No creditors' committee has yet been appointed in this case.

## II. Background

3. The Debtor provides comprehensive cloud-based environmental health and safety compliance and risk management software to its clients. The Debtor was founded in 2005 and its corporate offices are located at 33 Nagog Park, Acton, Massachusetts. The Debtor currently has 11 full-time employees.

4. When the Debtor began to experience financial difficulties, it grew increasingly unable to pay its substantial debt service through cash flow. Therefore, the Debtor decided that the best method of preserving the value of the company was to effectuate a sale of its assets. On January 16, 2019, the Debtor entered into a letter of intent agreement to sell all of its assets to an acquiring company for a cash purchase price of $2,300,000, plus various earn-out provisions which could produce a total purchase price of approximately $5,000,000.00. The Debtor anticipates filing a motion to sell the Debtor's assets within one week.

5. The Debtor's Chapter 11 petition was filed to provide the Debtor with sufficient time within which to consummate a sale as contemplated in the letter of intent agreement. The Debtor anticipates that the proceeds generated from the sale will be sufficient to satisfy in full all secured and priority claims and to provide a reasonable dividend to its unsecured creditors.

## III. The Debtor's Creditors

**Secured Debt**

6. The Debtor has five secured creditors: First, on November 24, 2015, the Debtor entered into a certain loan transaction with Kabbage, Inc. pursuant to which the Debtor owes approximately $75,000. The Debtor granted to Kabbage, as security for the indebtedness, a security interest in all of the Debtor's personal property and general intangibles, as well as certain future receivables.

7. Second, on May 30, 2017, the IRS filed a tax lien against the Debtor to secure indebtedness in the approximate amount of $1 million, for unpaid payroll taxes incurred since 2014. The Debtor believes that the amount owed to the IRS could exceed $1.8 million.

8. Third, on October 9, 2018, the Debtor entered into a certain loan transaction with Steve Webber ("Webber"), a director of the Debtor, pursuant to which the Debtor borrowed the sum of $400,000.00 and granted to Webber a security interest in certain of the Debtor's computer equipment. At the present time, the Debtor's indebtedness to Webber is in excess of $400,000, with a large portion of that unsecured. In view of the fact that Webber's security interest is solely limited to a portion of the Debtor's computers, which interest does not constitute cash collateral, the within motion is not seeking relief as to that debt.

9. Fourth, on March 6, 2019, in order to address immediate cash needs, the Debtor entered into a loan transaction with Scott Group LLC, pursuant to which the Debtor borrowed the sum of $50,000.00 and granted to Scott Group a security interest in all of the Debtor's assets.

10. Fifth, on March 11, 2019, in order to address immediate cash needs, the Debtor entered into a second loan transaction with Webber, pursuant to which the Debtor borrowed the sum of $25,000.00 and granted to Webber a security interest in all of the Debtor's assets for that loan.

**Unsecured Debt**

11. The Debtor currently has unsecured debt in the approximate amount of $7,000,000.00. Of that amount approximately $250,000 is owed to the Massachusetts Department of Revenue for priority taxes, $500,000.00 consists of trade debt, and the balance is owed to various noteholders, including the Debtor's officers and certain investors.

## IV.     Relief Requested

12. Section 363(c)(2) of the Code provides that, absent consent by the secured party, "The trustee (here, the debtor in possession) may not use, sell or lease cash collateral under paragraph (1) of this subsection unless: (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Section 363(e) of the Code requires that the court condition the use of cash collateral as is necessary to provide adequate protection to the secured creditor.

13. Section 361 of the Code provides that adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under Section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." *11 U.S.C. §§ 361(1), (2), (3)*.

14. What constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The purpose is to protect a secured creditor from diminution in value of its interest in the collateral during the period of use by the Debtors. *See In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

15. In the present case, it is evident that that the value of the Debtor's assets and its forthcoming sale, which will generate funds substantially in excess of the amount owed to the Secured Creditors, by itself, provides adequate protection for any possible diminution of the Secured Creditors' respective interests in their collateral resulting from Debtor's proposed use of cash collateral. However, in addition, the Debtor also proposes to grant to the Secured Creditors the following as additional adequate protection:

    a. The Debtor shall grant to Kabbage and the IRS a continuing replacement lien and security interest in the post-petition accounts receivable and to the proceed thereof to the same validity, extent and priority that they would have had in the absence of the bankruptcy filing; and

    b. The Debtor shall remain within its Budget, attached hereto as Exhibit A, within an overall margin of 10 percent.

16. The foregoing proposal more than adequately protects the Secured Creditors.

### V.    Notice

17. No trustee, examiner, or official committee has been appointed in this Chapter 11 case. Copies of this Motion have been furnished by ECF, fax or email to: (a) the Office of the United States Trustee for this district; (b) the Debtor's 20 largest unsecured creditors as reflected in the list filed by the Debtor pursuant to Fed. R. Bankr. P. 1007(d); (c) the Internal Revenue Service; (d) the Massachusetts Department of Revenue; (e) the Massachusetts Department of Unemployment Assistance; (f) the Debtor's secured creditors as reflected in the Debtor's schedules and statements filed in this case; and, (g) all parties that have requested notice in this case (collectively the "Notice Parties"). The Debtor submits that such service constitutes sufficient notice of this Application in the particular circumstances.

## VI. Conclusion

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter an order, in the form attached hereto, authorizing the Debtor to use cash collateral in accordance with the budget; and (b) grant such other and further relief as this Court may deem just and proper.

Respectfully submitted this 22nd day of March, 2019.

PERILLON SOFTWARE, INC.

By its attorneys,

*/s/ David B. Madoff*
David B. Madoff (BBO#552968)
Steffani M. Pelton (BBO#666470)
MADOFF & KHOURY LLP
124 Washington Street
Foxboro, MA 02035
(508) 543-0040
madoff@mandkllp.com